IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| JAMES CALLAHAN, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| RICHARD ALLEN, Commissioner | * |
| Alabama Department of Corrections, | * |
| | * |
| GRANTT CULLIVER, Warden, | *   Case No. 2:06CV919-MEF |
| Holman Correctional Facility, and | * |
| | * |
| OTHER UNKNOWN EMPLOYEES | * |
| AND AGENTS, | * |
| Alabama Department of Corrections, | * |
| | * |
| Individually, and in their | * |
| official capacities. | * |
| | * |
| Defendants. | * |

## COMPLAINT

1. This is a civil rights action brought under 42 U.S.C. § 1983 and the United States Constitution for violations and threatened violations of Plaintiff James Callahan's rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. Mr. Callahan is an Alabama prisoner under sentence of death who seeks injunctive and declaratory relief to prevent the Defendants from using the State of Alabama's current lethal injection procedures to execute him. The Defendants' improper use of anesthesia as a

precursor to execution unnecessarily risks infliction of pain and suffering. In addition, because the chemicals used for execution require the proper induction and maintenance of anesthesia, the Defendants' failure to use medically approved procedures and properly trained personnel creates an unacceptable risk that Mr. Callahan will suffer excruciating pain during the course of his execution.

## JURISDICTION

2. Jurisdiction of this matter arises under 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, and 28 U.S.C. § 2202.

## VENUE

3. Venue is appropriate in the Middle District of Alabama under 28 U.S.C. § 1391(b).

## THE PARTIES

4. Plaintiff James Callahan is a United States citizen and a resident of the State of Alabama. Mr. Callahan is a death-sentenced prisoner currently being held in the custody of the Defendants at Holman State Prison.

5. Defendant Richard Allen is the Commissioner of the Alabama Department of Corrections (ADOC). Defendant Grantt Culliver is the Warden of the Holman Correctional Facility in Atmore, Alabama. Other Unknown Employees and Agents of the Alabama Department of Corrections are involved in the development

and execution of lethal injections; Plaintiff does not yet know the identity of these persons. All of the Defendants are being sued in their individual and official capacities. The named Defendants are citizens and residents of the State of Alabama.

### GENERAL ALLEGATIONS

6. On November 7, 1987, Mr. Callahan was convicted of capital murder in Calhoun County, Alabama. On December 11, 1987, he was sentenced to death.

7. Under Alabama law, the ADOC is responsible for carrying out executions, all of which take place at the Holman Correctional Facility. Ala. Code § 15-18-82, 82.1. Alabama law does not prescribe specific drugs, dosages, drug combinations, sequences, or manner of administering lethal chemicals to carry out executions; nor does it prescribe any certification, training, or licensure required of those who participate in either the anesthesia process or the execution.

8. Undersigned counsel previously has requested the ADOC to provide him a copy of written protocols, if any exist, as well as information about procedures involved in carrying out Alabama executions. As of the date of this filing, no information has been provided to counsel.

9. Mr. Callahan asserts upon information and belief that the State of Alabama uses drugs to achieve first anesthesia, then paralysis, and finally execution by cardiac arrest. The drugs used include Thiopental, Pavulon, and Potassium

Chloride. This combination will likely subject Mr. Callahan to an excruciatingly painful and torturous death.

10.  The first drug, Thiopental (also known as sodium pentothal), is an ultra-short acting barbiturate which acts to depress the central nervous system to produce unconsciousness and anesthesia. Thiopental derives its utility from its rapid onset and rapid redistribution through the body at surgical doses. Typically, Thiopental is used in the induction phase of anesthesia to temporarily anesthetize patients for sufficient time to, for example, intubate the trachea.

11.  If it is necessary to maintain anesthesia for longer than just a few minutes, physicians typically use drugs other than Thiopental. If Thiopental is used not only to induce, but also to maintain, a surgical plane of anesthesia, a qualified person must be present to monitor continually the patient to ensure that the Thiopental has been correctly administered and is maintaining the patient in a state of unconsciousness.

12.  Defendants next administer pancuronium bromide, also referred to as Pavulon, which paralyzes voluntary muscles, including the diaphragm. Pavulon does not affect consciousness or the perception of pain. To the extent that the first chemical, Thiopental, is improperly administered and fails to establish and maintain a sufficient plane of anesthesia, the Pavulon serves only to mask the pain and

suffering that would attend a paralyzed diaphragm. Pavulon masks the tell-tale physical signs that would signal a properly trained observer whether or not a prisoner had been sufficiently anesthetized.

13. Finally, the drug that is used to execute the prisoner is potassium chloride. Potassium chloride disrupts the normal electrical activity of the heart and stops it from pumping blood, causing cardiac arrest. As it travels in the bloodstream from the site of injection towards the heart, potassium chloride activates all the nerve fibers inside the vein, causing a burning sensation as it courses through the body and ravages the internal organs.

14. This causes excruciating pain that is agonizing for a recipient who has not been properly anesthetized. Because of this risk of excruciating pain, the use of potassium chloride requires an appropriate anesthesia protocol prior to its administration to ensure an adequate depth of anesthetic plane. However, anesthetic depth cannot be reliably determined during Alabama executions because of the use of the Pavulon which blocks an accurate assessment by paralyzing all of the muscles with would otherwise move when in excruciating pain. Because no one can reliably assess anesthetic depth using this process (and make appropriate adjustments), the procedures the Defendants' use can result in the extreme terror and suffering of conscious suffocation.

15. The American Veterinary Medical Association (AVMA) states that the use of neuromuscular paralyzing drugs, including pancuronium bromide (Pavulon), solely or in conjunction with other drugs, is unacceptable as a method of euthanasia. The AVMA further states that the use of potassium chloride in a euthanasia protocol requires a surgical plane of anesthesia, which is characterized by loss of consciousness, loss of reflex muscle response, and loss of response to noxious stimuli. The AVMA recommends the use of a longer lasting barbiturate for animal euthanasia than the Thiopental which is used in Alabama executions of death-sentenced prisoners.

16. Defendants do not conduct lethal injections that comport with the appropriate standards of practice for inducing and monitoring anesthesia as a precursor to execution. Nor do Defendants take effective measures to ensure that a prisoner will not suffer a conscious and painful death under the current anesthesia procedures.

17. Defendants' anesthesia procedures lack medically necessary safeguards, and therefore substantially increase the risk that an inmate such as Mr. Callahan will suffer unnecessary pain during the course of his execution. There is no standardized time to administer each of the three chemicals. There are no procedures for ensuring that the anesthetic agent is properly flowing into the prisoner, and no procedures for

ensuring that the prisoner is properly sedated prior to the administration of other chemicals, as would be required in any medical or veterinary procedure before the administration of a neuromuscular blocking agent (such as pancuronium bromide) or the administration of a painful potassium chloride overdose.

18.   Defendants' existing procedures do not require any minimum qualifications or expertise required of the personnel who perform the tasks in the anesthesia and execution processes. Defendants do not adequately ensure that the individuals responsible for inducing and maintaining unconsciousness are credentialed, licensed, and proficient in the knowledge, skills, and procedures necessary to establish an appropriate plane of anesthesia throughout the lethal injection process, notwithstanding the fact that it is a complex medical procedure requiring expertise to be performed correctly.

19.   The absence of medical personnel credentialed, licensed, and proficient in the field of anesthesiology and the lack of adequate procedures greatly increases the risk that a prisoner will not receive the necessary amount of anesthetic prior to being paralyzed by the pancuronium bromide and then experiencing the painful internal burn of the potassium chloride, and greatly increases the risk that a conscious prisoner will experience excruciating pain and suffering.

20.   The lack of adequate standards for administration of chemicals, the lack

of qualifications of the personnel involved in the process, and the combination of the drugs the Defendants use as a precursor to an execution as well as for the execution creates a grave and substantial risk that Mr. Callahan will be conscious throughout the execution process and, as a result, will experience an excruciatingly painful and protracted death.

## CAUSE OF ACTION

### VIOLATION OF THE RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

21. Commissioner Allen, Warden Culliver, and other Unknown Employees and Agents of the Alabama Department of Corrections are acting under color of Alabama law in undertaking to execute Plaintiff James Callahan by lethal injection using an insufficient, improperly designed and improperly administered procedures for inducing and maintaining anesthesia prior to execution, and by using chemicals that cause severe pain in the process of causing death, such that Plaintiff will unnecessarily suffer an excruciating death in violation of his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

22. Although it is possible to conduct executions in a constitutionally

compliant manner, Defendants have chosen not to do so. While Defendants could select additional or alternative chemicals and/or retain qualified medical personnel to administer its chosen chemicals to ensure the constitutionality of its lethal injection procedure, Defendants have acted with deliberate indifference and failed to do so. Defendants' current procedures violate evolving standards of decency. See Estelle v. Gamble, 429 U.S. 97, 102 (1976) (Eighth Amendment requires courts to assess "evolving standards of decency that mark the progress of a maturing society"); Gregg v. Georgia 428 U.S. 153, 173 (1976) (Eighth Amendment prohibits infliction of unnecessary and wanton pain); Trop v. Dulles, 356 U.S. 86, 101 (1958) (same).

## PRAYER FOR RELIEF

For these reasons, Plaintiff James Callahan respectfully requests this Court to:

A. Grant injunctive relief to enjoin Defendants from executing Plaintiff with inadequate anesthesia and execution procedures that violate the Eighth Amendment prohibition against cruel and unusual punishments;

B. Enter a declaratory judgment that Defendants' inadequate anesthesia and execution procedures violate the Eighth Amendment prohibition against cruel and unusual punishments;

C. Grant reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and the laws of the United States, as well as costs of suit; and

D.  Grant any further relief as it deems just and proper.

Respectfully submitted,

*/s/ Randy Susskind*
RANDALL S. SUSSKIND (SUS002)
Equal Justice Initiative of Alabama
122 Commerce Street
Montgomery, Alabama 36104
(334) 269-1803
rsusskind@eji.org

Counsel for Plaintiff James Callahan

October 11, 2006

## CERTIFICATE OF SERVICE

I certify that on October 11, 2006, I served two copies of this complaint by first-class mail to:

Commissioner Richard Allen
Alabama Department of Corrections
301 S. Ripley St.
P.O. Box 301501
Montgomery, AL  36130-1501

Warden Grantt Culliver
Holman Prison
Holman 3700
Atmore, AL  36503-3700

_____
Randall Susskind